Matthew A. Haltzman, WY #7-5460
Haltzman Law Firm, PC
204 Maple Street, Suite 101
Fort Collins, CO 80521
Telephone: (970) 692-3440

Kylie M. Schmidt, WY #8-6993
OGBORN MIHM LLP
1700 Lincoln Street, Suite 2700
Denver, CO 80203
Telephone: (303) 592-5900

## UNITED STATES DISTRICT COURT
### for the
### DISTRICT OF WYOMING

| | | |
|---|---|---|
| J.D. b/n/f EMILY DEJESUS and ISHMAEL DEJESUS, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Civil Doc. No. |
| LARAMIE COUNTY SHERIFF'S OFFICE, a Division of Laramie County, and BENJAMIN JACQUOT, in his official and individual capacities as a Deputy Sheriff of the Laramie County Sheriff's Office, | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## COMPLAINT AND JURY DEMAND

Plaintiff, J.D., b/n/f Emily DeJesus and Ishmael DeJesus, through his

undersigned counsel, Kylie M. Schmidt of Ogborn Mihm, LLP and Matthew A.

Haltzman of Haltzman Law Firm, PC, for his Complaint and Jury Demand against

Laramie County Sheriff's Office, a Division of Laramie County, and Deputy Sheriff

Benjamin Jacquot, in his official and individual capacities as a Deputy Sheriff of the

Laramie County Sheriff's Office, alleges as follows:

## **INTRODUCTION**

1.     This civil action asserts claims pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 12132, and 29 U.S.C. § 794 against Laramie County Sheriff's Office Deputy Sheriff Benjamin Jacquot, in his individual capacity acting under color of law as officer, deputy, employee, and agent of the Laramie County Sheriff's Office, for (a) his violations of the Fourth and Fourteenth Amendments based on his unreasonable seizure of and use of force against J.D. when no seizure or force at all was necessary, in violation of 42 U.S.C. § 1983; his violations of the American Disabilities Act and his failures to accommodate J.D., a child with a disability, in violation of 42 U.S.C. § 12132; and (c) his violations of the Rehabilitation Act, 29 U.S.C. § 794.

2.     On February 15, 2022, Laramie County Deputy Sheriff Benjamin Jacquot, in his role as the School Resource Officer at Freedom Elementary School in Cheyenne, Wyoming, committed a vicious physical assault upon a disabled eight-year-old boy, second grader J.D.

3.     As shown on the body cam video of the incident, as well as the post-incident medical records, Deputy Jacquot's assault left J.D. profusely bleeding from his nose and from multiple lacerations on his face.  Some of these physical wounds are depicted in Figures 1(a) and 1(b) below.

4.     As a result of the assault, J.D. has undergone, and continues to undergo, extensive and on-going medical, psychiatric, and psychological treatment.

 

*Figure 1(a). Photo of J.D. taken the day of the incident involving Deputy Jacquot.*
*Figure 1(b). Photo of J.D. taken the day after the incident involving Deputy Jaquot.*

5.    Following the assault, portions of the body cam video of the incident could not be retrieved from Deputy Jacquot's body cam.

6.    Upon information and belief, following the assault, Deputy Jacquot deleted portions of his body cam video of the event in an effort to conceal his wrongdoing.

7.    The remaining undeleted body cam video recording of the event demonstrates that Deputy Jacquot's conduct shocks the conscience.

8.    At the time of the assault, Deputy Jacquot (who is White) weighed over 250 pounds and eight-year-old J.D. (who is African American) weighed 68 pounds.

9.    At all times relevant to this Complaint, J.D.'s father, Ishmael DeJesus, was and is a Master Sergeant in the United States Air Force, an eighteen-year

veteran who was on active duty at Francis E. Warren Air Force Base in Cheyenne, Wyoming.

10.     At all times relevant to this Complaint, J.D.'s mother, Emly DeJesus, R.N. was and is a licensed registered nurse who currently works in the Neonatal Intensive Care Unit at a pediatric hospital.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action pursuant to the following provisions: (a) 28 U.S.C. § 1331, because this action arises under the Constitution and laws of the United States; (b) 28 U.S.C. § 1343(3), because this action arises under a law of the United States providing for equal rights; and (c) 42 U.S.C. §§ 1983 and 1988, because this action is being brought to redress deprivation of rights, privileges, and immunities secured by the Constitution and laws of the United States

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because the Defendants reside and have been located within the jurisdiction of this Court; and because the unlawful actions were committed by the Defendants in Cheyenne, Wyoming within the jurisdiction of this Court.

## PARTIES

13.     Plaintiff J.D. was, during all times relevant to this Complaint, an eight-year-old boy who resided with his mother and father, in Laramie County, Wyoming.

14.     Plaintiff Ishmael DeJesus is, and during all relevant times has been, J.D.'s parent and guardian and an adult citizen of the United States.  At the time of the events complained of herein, Plaintiff Ishmael DeJesus was a resident of Laramie County, Wyoming.

15.     Plaintiff Emily DeJesus is, and during all relevant times has been, J.D.'s parent and guardian and an adult citizen of the United States.  At the time of the events complained of herein, Plaintiff Emily DeJesus was a resident of Laramie County, Wyoming.

16.     Plaintiff Ishmael DeJesus and Plaintiff Emily DeJesus have been married since 2012.

17.     Defendant Deputy Sheriff Benjamin Jacquot is and was, during all relevant times, an employee of the Laramie County Sheriff's Office acting in his official capacity and under color of law; is being sued in his individual capacity; and resides in Laramie County, Wyoming.

18.     Defendant Laramie County Sheriff's Office is and was, during all relevant times, a part of the body corporate and politic within the State of Wyoming known as Laramie County, and, in that capacity, has been the employer of and had supervisory authority over Deputy Jacquot.

19.     Defendant Laramie County Sheriff's Office is a division, or office, within Laramie County and has the function on behalf of Laramie County of providing police services.

20.     The requirements prescribed by Wyoming's statutory notice of claim provisions, including the Governmental Immunity Act of Wyoming (the "Act"), WY Stat § 1-39-113 (2013), are not applicable to the claims being asserted in this civil action because the claims being asserted in this civil action are being brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 12132.

21.     Nevertheless, in an abundance of caution, Plaintiff has provided timely and proper notice of claims to the Defendants pursuant to and in accordance with the applicable statutes, including WY Stat § 1-39-113 (2013).

## FACTUAL ALLEGATIONS

22.     Master Sergeant Ishmael DeJesus has served in the United States Air Force since 2004.  He has twice been deployed to active combat zones in Iraq and he carries an exemplary service record of nearly 20 years.

23.     His wife, Emily DeJesus, R.N. is a licensed registered nurse.  Nurse DeJesus currently works as a nurse in the NICU of a pediatric hospital.

24.     Ishmael and Emily DeJesus were married in 2012.  Their son and only child, J.D., was born at a U.S. Air Force base in Aviano, Italy on October 19, 2013.

25.     From 2016 to 2019, the DeJesus family was stationed at Scott Air Force Base in Illinois.

26.     In May of 2019, the DeJesus family was transferred to Francis E. Warren Air Force Base in Cheyenne, Wyoming.

27.     Upon moving to Cheyenne, J.D. was enrolled in Kindergarten at Freedom Elementary School, which is part of Laramie County School District 1.

6

28.     Freedom Elementary School is located on and within Francis E.

Warren Air Force Base.




*Figures 2(a) and 2(b).  Photographs of the DeJesus family.*

29.     At the time of the February 15, 2022 assault, J.D. was under the

protection of an Individualized Education Plan (IEP) pursuant to 34 C.F.R.

§§300.320-300.324 due to diagnosed neurodivergent disability.

30.     At the time of the February 15, 2022 assault, Laramie County School

District had designated J.D. as a "child with a disability" as defined in 34 C.F.R.

300.8 as a result of his diagnosed neurodivergent disability.

31.     As a result of his diagnosed neurodivergent disability and its attendant

emotional issues, an IEP was developed and implemented by Laramie County

School District for J.D pursuant to 34 C.F.R. §§300.320-300.324.

32.     An IEP is a plan developed to ensure that a child with an identified disability who is attending a public elementary school receives specialized instruction and related services.  The purpose of an IEP is to provide the student with the necessary support, services, and accommodations to enable the student to access and benefit from his or her education.

33.     An IEP creates an opportunity for teachers, parents, school administrators, and related services personnel like School Resource Officers to work together to improve educational results for children with disabilities.

34.     As stated in J.D.'s IEP, when J.D. is experiencing emotional issues, his IEP required, among other things, "Breaks in a quiet area when he is feeling frustrated.  When he is frustrated give him space to calm down."

35.     In the IEP, J.D.'s teachers, parents, and health care providers recognized that, due to J.D.'s ADHD, confrontation and escalation with J.D. was not an appropriate or safe method of addressing J.D.'s emotional issues.  Rather, J.D.'s IEP specifically called for de-escalation of confrontations by providing the disabled child with time and space to decompress and this had proven to be a successful approach.

36.     On February 15, 2022, J.D. went to the school principal's office for his lunch recess, which he had been doing since February 11, 2022, in accordance with his IEP and Behavior Plan.

37.     At the principal's office, J.D.'s teacher attempted to speak with him about comments J.D. had made to the adult cashier while in the lunchroom.

8

38.     The school Principal, Chad Delbridge, joined J.D.'s teacher in speaking with J.D. about his behavior and whether J.D. should apologize to the lunchroom cashier.

39.     Deputy Jacquot happened to be standing near the principal's office at this time with his body cam recording because he was present at Freedom Elementary School for a random "security check."

40.     J.D. was responding well to the intervention, as shown below on Deputy Jacquot's body cam video (*Figure 3*).

41.     Deputy Jacquot knew that J.D. had a disability prior to his assault on J.D. on February 15, 2022.

42.     Deputy Jacquot knew that J.D. was under the protection of an IEP prior to his assault on J.D. on February 15, 2022.

43.     Consistent with J.D's status as a disabled child as well as his IEP, Deputy Jacquot was required to employ a reasonable intervention with respect to J.D. such as crisis intervention, de-escalation, patience, and waiting.



*Figure 3. Screen capture from Deputy Jacquot's body cam video of Principal Delbridge speaking with J.D. just moments before the physical assault began.*

44.     At no time did Principal Delbridge or J.D.'s teacher request any help, assistance, involvement, or intervention from Deputy Jacquot.

45.     The first five minutes of Deputy Jacquot's body cam video (from 0:00 to 5:15) show a calm, peaceful, and appropriate interaction between J.D., Principal Delbridge, and J.D.'s teacher.  J.D. is sitting quietly while Principal Delbridge quietly speaks with him.

46.     The next portion of the body cam video was, upon information and belief, deleted by Deputy Jacquot following the assault.  But, according to Principal Delbridge's written report, Deputy Jacquot grabbed J.D. by the arm when J.D. stood

up and began walking away from Principal Delbridge to return to class.  Again, there was no request whatsoever from Principal Delbridge that Deputy Jacquot help, assist, or become involved in any way with J.D.

47.     J.D. was not a threat to himself or to anyone else.  There was no reason at all for Deputy Jacquot to become involved with J.D. during this interaction with Principal Delbridge.

48.     Deputy Jacquot, nevertheless, forcibly wrestled J.D. into a nearby conference room using an armlock where the assault grew violent.

49.     During the deleted portion of the body cam video, Deputy Jacquot repeatedly slammed J.D. face down onto the floor of the conference room causing multiple bleeding facial injuries.

50.     During the deleted portion of the body cam video, Deputy Jacquot, who weighed over 280 pounds, climbed on top of J.D while he pinned J.D. face down on the floor and this caused J.D. to struggle to breathe.

51.     During the deleted portion of the body cam video, Deputy Jacquot screamed threats at J.D.

52.     The undeleted body cam video returns at 5:16, at which point J.D. is pinned underneath Deputy Jacquot while J.D. screams and cries in pain and fear.

53.     At this point, J.D. is bleeding from wounds on his face, and his smeared blood is visible on the video.

54.     At this point, J.D. is struggling to breathe and is coughing.

55.     As shown on the video, Deputy Jacquot is out of control, pinning J.D. by his arms face down to the ground in a prone restraint position and yelling threats at J.D.

56.     J.D., meanwhile, is struggling to breathe, and is coughing.

57.     The prone restraint used by Deputy Jacquot on J.D. is specifically banned from use in schools by the Wyoming Administrative Code: Chapter 42, Section 7, entitled "Seclusion and Restraint in Schools."

58.     Deputy Jacquot, in his role as a school resource officer, was required to abide by the Wyoming Administrative Code: Chapter 42, Section 7, entitled "Seclusion and Restraint in Schools."

59.     On the video, J.D. repeatedly states, "I give up." In response, Deputy Jacquot screams at the child, "No, it's all me! Do you understand me! I should be taking you to jail!"



*Figure 4. Screen capture from Deputy Jacquot's body cam video of Deputy Jacquot pinning J.D.'s arms behind him.*

60.     Deputy Jacquot's assault on the child continued for many minutes.

61.     Eventually, Principal Delbridge called Master Sergeant DeJesus and asked him to come and get his son.

62.     Master Sergeant DeJesus arrived shortly thereafter and Defendant Jacquot spoke to him about the events that occurred over the lunch recess.

63.     As shown on the body cam video, Deputy Jacquot states to Master Sergeant DeJesus that he grabbed J.D. by the arm when J.D. attempted to leave the principal's office to return to class.

64.     In response, as shown on the body cam video, Master Sergeant DeJesus inquired as to why Defendant Jacquot put his hands on J.D. when J.D. wasn't hurting anyone, in violation of J.D.'s IEP.

65.     In the video, Deputy Jacquot responds "Because, as a law enforcement officer, that's my primary function."

66.     Deputy Jacquot failed to employ reasonable interventions with respect to J.D. such as crisis intervention, de-escalation, patience, and waiting, which would have been consistent with J.D's status as a disabled child as well as his IEP,

67.     J.D.'s father then brought J.D. home.

68.     That same day, upon seeing J.D.'s injuries, J.D.'s mother took J.D. to a local medical facility to receive medical treatment for the physical injuries which were inflicted by Deputy Jacquot.

69.     J.D. sustained serious and continuing psychological injuries as a direct result of the events described above as evidenced by the following:

    a.  J.D. and his family had to be eventually relocated by the U.S. Air Force to a different air force base in a different state as a result of the assault;

    b.  J.D. has been under the continuing care and treatment of a Ph.D. child psychologist as a result of the assault;

    c.  J.D. has been required to attend an elementary school for children with emotional disturbances as a result of the incident;

    d.  J.D. has developed a fear and mistrust of law enforcement as a result of the assault; and

    e.  J.D.'s psychological injuries from the assault, at this time, appear to be permanent.

70.     As noted above, immediately after his assault on J.D., Deputy Jacquot went to his vehicle, and, upon information and belief, destroyed evidence by deleting his body cam video which showed the most violent portion of the assault, as well as the footage of his improper intervention into and escalation of this situation.

71.     Deputy Jacquot then accessed J.D.'s school records after the incident.

72.     Deputy Jacquot placed excerpts from J.D.'s private and protected school records into his Laramie County Sheriff's Office report of the incident.

14

73.     Deputy Jacquot used J.D.'s private and protected school records to try to justify his assault on a child by placing the records in his Laramie County Sheriff's Office report of the incident.

74.     On May 19, 2022, Emily DeJesus received a letter from Jim Fraley, the Superintendent of the Laramie Couty School District, in response to her inquiries regarding how Deputy Jacquot had obtained her son's private and protected school records.

75.     Mr. Fraley's letter stated that the School District had conducted an investigation into Deputy Jacquot's access of J.D.'s school records and concluded, "Deputy Jacquot's access to son's records: We have found that he had no need to access these records in his work with this situation. Upon learning that he had access to records of students Freedom Elementary School, we restricted his access to all records at the school."

76.     Notably absent from the 43 minute and 37 second total video footage captured by Defendant Jacquot's body camera is any behavior whatsoever on J.D.'s part that would require law enforcement intervention at the level of force used by Deputy Jacquot.

77.     Notably absent from all of the post-incident written reports is any behavior whatsoever on J.D.'s part that would require any law enforcement intervention.

78.     Both prior to and at the time that J.D. was physically assaulted by Deputy Jacquot, he did not pose any danger to the Defendant Deputy or to any member of the public.

79.     J.D. was not suspected of committing any crime.

80.     On February 18, 2022, Principal Delbridge met with Defendant Jacquot and asked him to not intervene again with J.D. unless it was a life-threatening situation for J.D. or another staff member or student.

81.     Deputy Jacquot's actions were violations of Wyoming public school policies.  Including grabbing J.D.'s arm (WY Dept of Edu. Ch 42, section 6(f), arm may not be grabbed if student is not complying) and conducting a prohibited prone restraint (WY Dept. of Edu Ch. 42, section 6 (j)(iv) and section 7(i) restraint).

82.     Deputy Jacquot was working as a School Resource Officer in a school environment where individualized IEP plans and other school policies are in place for student safety, yet all of this was disregarded by Deputy Jacquot.

83.     Deputy Jacquot was aware that J.D. was under the protection of an IEP at the time Deputy Jacquot assaulted J.D.

84.     Deputy Jacquot was aware of J.D.'s serious neurodivergent issues at the time Deputy Jacquot assaulted J.D.

85.     Deputy Jacquot knew, or should have known, that J.D. was disabled at time Deputy Jacquot assaulted J.D.

86.     Despite Deputy Jacquot's unlawful use of excessive force, he was not disciplined or even re-trained by the Laramie County Sheriff's Department.

16

87.     42 U.S.C. § 1983 provides, in pertinent part: "Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . "

88.     Defendant Jacquot, acting under color of state law, violated J.D.'s right under the Fourth and Fourteenth Amendments to be free from unlawful restraint and the unreasonable use of force.

89.     Defendant Jacquot, acting in his official and individual capacities, subjected J.D. to, and caused J.D. to be subjected to, a deprivation of his Constitutional rights.

90.     Defendant Jacquot's actions were not objectively reasonable under the circumstances.

91.     As a direct and proximate result of Defendants' actions, J.D. suffered injuries, damages, and losses.

92.     The Laramie County Sheriff's Department's use of force policy requires the use of no more force than the amount of force necessary and reasonable to control an individual detained or arrested, based upon the totality of the circumstances.

93.     The Laramie County Sheriff's Department's use of force policy states that necessary and reasonable force is dependent upon the actions of the individual

17

subject, the nature and seriousness of the offense, and the actual or potential presence of weapons. Additional considerations include the danger to the deputy or bystanders, the number of subjects present and the environmental conditions.

94.     The Laramie County Sheriff's Department's use of force policy states that Deputies are authorized to use department approved non-deadly force techniques and authorized equipment for resolution of incidents as follows:

      a.     To protect themselves or another from physical harm;

      b.     To restrain or subdue a resisting individual; or

      c.     To bring an unlawful situation safely and effectively under control.

95.     On February 15, 2022, at the time that Deputy Jacquot assaulted J.D.:

a.  J.D., was 8 years old and weighed 68 pounds.

b.  J.D. had not committed any crime or criminal offense.

c.  Defendant Jacquot had no suspicion that J.D. had committed any crime.

d.  J.D. was not under arrest.

e.  Defendant Jacquot had no probable cause to make an arrest.

f.  J.D. had the legal right to walk away from Defendant Jacquot.

g.  J.D.'s action that initiated physical contact by Defendant Jacquot was attempting to leave the Principal's office to return to class.

h.  J.D. did not have a weapon, nor was there any potential that he did.

     i.   Neither Defendant Jacquot, Principal Delbridge, nor anyone else present in the office was in any danger of physical harm.

     j.   The environmental condition was a school office with a number of children and staff members present.

     k.   Defendant Jacquot had no legal authority to place his hands on J.D. or to physically take him anywhere.

96.    Laramie County, by and through the Laramie County Sheriff's Office, is liable for the actions of its employee Deputy Jacquot.

97.    Deputy Jacquot continues to be employed by the Larimer County Sheriff's Office as a law enforcement officer who interacts with the public at large including children.

98.    At all times relevant to this Complaint, Defendants were acting or failing to act under color of state law.

99.    Laramie County, by and through the Laramie County Sheriff's Office, having been notified of Deputy Jacquot's actions against J.D. by his mother Emily DeJesus, informed her that they believed that Deputy Jacquot's actions were appropriate and justified.

### Count I:  Unreasonable Seizure and Excessive Force in Violation of the U.S. Constitution, Fourth and Fourteenth Amendments 42 U.S.C. § 1983

*Against Defendant Laramie County Sheriff's Office through the actions of its employee Deputy Sheriff Benjamin Jacquot.*

100.    Plaintiff incorporates by reference the above paragraphs as though fully set forth herein.

101.    The U.S. Constitution protects Plaintiff J.D. against unreasonable seizures and excessive force. "[T]he reasonableness of a particular seizure depends not only on *when* it is made, but also on *how* it is carried out." *Graham v. Connor*, 490 U.S. 386, 395 (1989).  Whether a seizure and a use of force is unreasonable and unconstitutional depends upon the totality of the circumstances.

102.    The seizure of and excessive use of force against Plaintiff J.D. was unreasonable in light of the totality of the circumstances, including but not limited to:

    a.  The age, size, and disability of the child, including his limited ability to impose physical harms on others and his limited ability to form criminal intent and the fact that he was not engaging in any criminal behavior;

    b.  That the child was experiencing behavior problems associated with his disability while at elementary school and was merely leaving the principal's office to return to class when he was assaulted;

    c.  That Deputy Jacquot physically assaulted and physically injured the child;

    d.  That Defendant Jacquot psychologically and emotionally traumatized the child.

    e.  By engaging in the acts described herein, Defendant Jacquot, acting under color of law and with deliberate indifference, violated the Plaintiff's rights under the U.S. Constitution to be free from unreasonable seizures and excessive force.

    f.  The rights of Plaintiff J.D. to be free from unreasonable seizures and excessive force as described herein was clearly established in law at the time of the incidents alleged.

    g.  Defendant Jacquot acted maliciously, intentionally, and in reckless disregard to the rights of the Plaintiff J.D.

103.    As a proximate result of the actions and inactions of Defendants, Plaintiff J.D. suffered and continues to suffer physical pain, emotional pain, psychological injury, trauma, and suffering.  Plaintiff J.D. continues to experience fear, distrust, and anxiety regarding law enforcement officers such as School Resource Officers. Plaintiff J.D. is entitled to compensatory damages, punitive damages, and reasonable attorneys' fees and costs.

## Count II: Disability-Based Discrimination
## In Violation of Title II of the Americans with Disabilities Act
## 42 U.S.C. § 12132, 28 C.F.R. § 35.130(b)(3), (8)

*Against Defendant Laramie County Sheriff's Office through the actions of its employee Deputy Sheriff Benjamin Jacquot.*

104.    Plaintiff incorporates by reference the above paragraphs as though fully set forth herein.

105.    The regulations implementing Title II of the ADA require that public entities avoid unnecessary practices or methods of administration that have the effect or tendency of excluding or discriminating against persons with disabilities. 28 C.F.R. § 35.130(b)(3), (8).

106.    Students with disabilities, and particularly students with disabilities involving behavior challenges, including Plaintiff J.D., are particularly susceptible to and injured by the unnecessary use of excessive force, on the basis of disability.

107.    The effects on these students with disabilities include substantial and disproportionate physical and emotional injuries, and disruptive exclusions from the school community.

108.   Instead of the unnecessary use of restraint and excessive force, students with disabilities require reasonable modifications such as crisis intervention, de-escalation, patience, and waiting.

109.   Here, through the above-described actions and inactions of its employee Deputy Sheriff Benjamin Jacquot, the Defendant Laramie County Sheriff's Office has violated the ADA.

110.   Through the failure of its employee, Deputy Sheriff Benjamin Jacquot, to provide reasonable modifications to Plaintiff J.D., a child with disabilities, such as crisis intervention, de-escalation, patience, and waiting, Defendant Laramie County Sheriff's Office has violated the ADA.

111.   Plaintiff J.D. is entitled to compensatory damages and attorneys' fees and costs.

### Count III: Failure to Accommodate in Violation of Title II of the Americans with Disabilities Act 42 U.S.C. § 12132, 28 C.F.R. § 35.130(b)(7)

*Against Defendant Laramie County Sheriff's Office through the actions of its employee Deputy Sheriff Benjamin Jacquot.*

112.   Plaintiff incorporates by reference the above paragraphs as though fully set forth herein.

113.   Title II of the ADA requires that public entities do not subject individuals with disabilities to discrimination, and that such public entities provide reasonable modifications to persons with disabilities. 42 U.S.C. § 12132, 28 C.F.R. § 35.130(b)(7).

114.    Under these provisions, law enforcement officers, including School Resource Officers like Defendant Jacquot, may not discriminate on the basis of disability, and must provide reasonable modifications as needed during their interactions with individuals with disabilities.

115.    Based on all of the circumstances stated herein, Defendant Jacquot knew or should have known that Plaintiff J.D. was a person with disabilities who required reasonable modifications under the ADA due to his disability-related difficulties.

116.    Instead of providing reasonable modifications such as crisis intervention, de-escalation, patience, and waiting, Defendant Jacquot escalated his encounter with Plaintiff J.D., and subjected him to unnecessary physical restraint and excessive force. In so doing, Defendant Jacquot acted with deliberate indifference.

117.    As a proximate result of the actions and inactions of Defendant Deputy Sheriff Benjamin Jacquot acting as an employee of Defendant Laramie County Sheriff's Office, Plaintiff J.D. suffered and continues to suffer physical pain, emotional pain, psychological injury, trauma, and suffering.

118.    Plaintiff J.D. is entitled to compensatory damages, and reasonable attorneys' fees and costs.

### Count IV: Violations of the Rehabilitation Act- 29 U.S.C. § 794

*Against Defendant Laramie County Sheriff's Office through the actions of its employee Deputy Sheriff Benjamin Jacquot.*

119.   Plaintiff incorporates by reference the above paragraphs as though fully set forth herein.

120.   Section 504 of the Rehabilitation Act forbids programs that receive federal financial assistance to discriminate against individuals with a disability solely because of their disability. 29 U.S.C. § 794(a).

121.   The Laramie County Sheriff's Office receives federal financial assistance.

122.   The substantive standards of Title II ADA claims and § 504 Rehabilitation Act claims are the same. Thus, for the same reasons as discussed above, Defendant Jacquot violated the Rehabilitation Act.

123.   Defendant Jacquot discriminated against J.D. solely because of J.D.'s disability.

124.   As a proximate result of the actions and inactions of Defendant Deputy Sheriff Benjamin Jacquot acting as an employee of Defendant Laramie County Sheriff's Office, Plaintiff J.D. suffered and continues to suffer physical pain, emotional pain, psychological injury, trauma, and suffering.

125.   Plaintiff J.D. is entitled to compensatory damages, and reasonable attorneys' fees and costs.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues triable by a jury.

## PRAYER FOR RELIEF

**WHEREFORE**, pursuant to the above Causes of Action, Plaintiff prays for Judgment against the Defendants, and each of them, jointly and severally, as follows:

(1)     Declare that the actions and inactions described herein violated the rights of Plaintiff J.D. under the U.S. Constitution, the Americans with Disabilities Act, and the Rehabilitation Act;

(2)     Issue an order enjoining the Defendants from engaging in the unlawful conduct complained of herein;

(3)     Award Plaintiff compensatory damages;

(4)     Award Plaintiff punitive damages;

(5)     Award reasonable attorneys' fees and costs pursuant to 42 U.S.C. §§ 1988 and 12205; and § 504 of the Rehabilitation Act; and all claims allowed by law.

(6)     Grant such other and further relief as the court deems just and proper.

Respectfully submitted this 27th day of November, 2023.

**OGBORN MIHM LLP**

*/s/Kylie M. Schmidt*
Clayton E. Wire, *pro hac vice* forthcoming
Peter A. McClenahan, *pro hac vice forthcoming*
Kylie M. Schmidt, WY No. 49478
OGBORN MIHM, LLP
1700 Lincoln Street, Suite 2700
Denver, Colorado 80203
Phone Number: (303) 592-5900
E-mail: Clayton.Wire@OMTrial.com
Peter.McClenahan@OMTrial.com
Kylie.Schmidt@OMTrial.com

Matthew Haltzman, WY # 7-5460
Haltzman Law Firm PC
204 Maple Street | Suite 101
Fort Collins, Colorado 80521
Phone Number: (970) 692-3440
Email: matthew@haltzmanlaw.com
*Attorneys for Plaintiff*